# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ROY BLANKENSHIP, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION FILE |
| | * | NO. 1:11-CV-0429 |
| v. | * | |
| | * | |
| BRIAN OWENS, Commissioner | * | |
| Georgia Dep't of Corrections, | * | |
| | * | |
| CARL HUMPHREY, Warden, | * | |
| Georgia Diagnostic and | * | |
| Classification Prison, | * | |
| | * | |
| OTHER UNKNOWN EMPLOYEES | * | |
| AND AGENTS, | * | |
| Georgia Dep't of Corrections, | * | |
| | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' SPECIAL APPEARANCE PRE-ANSWER MOTION TO DISMISS AND SPECIAL APPEARANCE RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

Come now, Defendants Brian Owens and Carl Humphrey, by and through

counsel, Samuel S. Olens, Attorney General for the State of Georgia, by Special

Appearance and without waiving any defense, and file their Pre-Answer Motion to

Dismiss and Response to Plaintiff's Complaint and Motion for a Temporary

Restraining Order, showing the Court as follows:

## I.   PROCEDURAL HISTORY AND ALLEGATIONS

On February 11, 2011, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983, seeking to reargue, for a third time, whether speculation as to the efficacy of the thiopental used successfully (now) in two executions is sufficient to stay an execution.[1] (Complaint, ¶¶ 2-5; "Appendix A" to the Complaint; *and see* Order from Superior Court of Fulton County, Case No. 2011CV195436, a true and accurate copy of which is attached hereto as Exhibit 5; Order from Superior Court of Fulton County, Case No. 2011CV195623, Order of the Georgia Supreme Court denying Appeal, Order of Supreme Court of the United States, Case No. 10-8590, denying Writ on Appeal of Case No. 2011CV195623, true and accurate copies of which are attached hereto as Exhibit 6).

Plaintiff has also filed a Motion for Temporary Restraining Order ("TRO") seeking to enjoin "the Defendants from carrying out [his] execution."   Plaintiff admits that there is no execution currently scheduled. (Plaintiff's Motion for TRO p. 2, ¶ 2).  It is Plaintiff's contention that he has "proof" via "labels, company records, and EU and UK regulator laws" that the thiopental used in the previous two executions has "almost certainly expired."

---

[1] The thiopental in question has been used successfully in at least three executions; in addition to the executions of Brandon Rhode and Emmanuel Hammond in the State of Georgia, it was successfully used in the execution of Jeffrey Landrigan on October 27, 2010, by the State of Arizona.

As Plaintiff failed to exhaust his administrative remedies, lacks standing, fails to state a claim, and fails to show that his requested relief is warranted his action(s) must be dismissed.

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Plaintiff failed to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust their administrative remedies *prior* to filing a lawsuit. 42 U.S.C. § 1997e(a). Pursuant to Congress' constitutional authority, the PLRA mandates that "*no action*" be brought "with respect to prison conditions" by an inmate "until such administrative remedies as are available are exhausted. *Id.* (Emphasis added).

Proper exhaustion is required under the PLRA, and unexhausted claims cannot be brought in court. *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006).  The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 127 S. Ct. 910, 914 (2007).  "When a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing [an action]." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005).  Exhaustion is mandatory, even when it is futile. *Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998).  To exhaust administrative

remedies in accordance with the PLRA, prisoners must "properly take each step in the administrative process." *Johnson v. Meadows*, 418 F.3d at 1158.

Exhaustion should be decided on a Rule 12(b) motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008).  Although motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b),"[F]ederal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules." *Id.* at 1375.  In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the district court may look beyond the pleadings and decide disputed issues of fact. *Id.*  at 1376-77.  Therefore, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record. *Id.*

A two-step process is applied when deciding exhaustion motions. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).   First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response and if they conflict, the court takes the plaintiff's version of the facts as true. *Id.*  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (*citing*, *Bryant*, 530 F.3d at 1373-74).

4

If the complaint is not subject to dismissal at the first step, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. *Bryant*, 530 F.3d at 1373-74, 1376; *Turner*, 541 F.3d at 1082. Once the court makes findings on the disputed issues of fact, it then must decide, based on those findings, whether the inmate has exhausted available administrative remedies. *Turner* at 1083.

### 1.  Additional Facts Bearing on Exhaustion

The Georgia Department of Corrections ("GDC") maintains a grievance process that is available to all inmates. (See Affidavit of Victoria Malone, ¶ 8, a true and accurate copy of which is attached hereto as Exhibit 1). The inmate grievance procedures followed at all GDC prisons, including the Georgia Diagnostic and Classification Prison ("GDCP"), are specified in GDC Standard Operating Procedure ("SOP") IIB05-0001. (Exhibit 1, ¶ 7; Exhibit 1-A).

Completion of the grievance process according to SOP IIB05-0001 requires a three-step process: step one is the filing of an informal grievance; step two is the filing of a formal grievance; and step three is the filing of an appeal of the decision given by the Warden to the formal grievance. (Exhibit 1, ¶ 10). The inmate must comply with the policy's procedural requirements at each step of the process. (Id.)

Inmates are given an oral explanation of the grievance procedure and an inmate handbook which includes instructions about the procedure. (Id. at ¶ 11).

Inmates housed in a lockdown unit may also request that a copy be brought to them for review. (Id. at ¶ 12).   Informal grievances are available in all living units; inmates in isolation or segregated areas can obtain forms from either the officer on duty or their dorm counselors, who are available on a regular basis. (Id. at ¶¶ 14, 15). The filing of an informal grievance form constitutes step one in the grievance process. (Id. at ¶ 18).

In the instant case, Plaintiff failed to exhaust his administrative remedies and his action(s) must be dismissed.  On February 10, 2011, one day prior to his filing the instant actions, Plaintiff filed an informal grievance relating to the thiopental to be used in executions. (Exhibit 1, § 38; Exhibit 1-C).   Neither a formal grievance nor an appeal has been filed by Plaintiff in relation to the claims at issue in these actions.  At best, Plaintiff has completed step one of the three step process provided in the GDC grievance procedure.[2]

Exhaustion is mandatory, even when it is futile. *Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998).  To exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step in the administrative process." *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir.

---

[2] Plaintiff's informal grievance was rejected based on his failure to comply with a procedural requirement of the policy and thus, he arguably failed to complete any of the three steps of the procedure. (Exhibit 1, ¶ 39).  As Plaintiff unquestionably failed to fully exhaust his remedies, completion of one step versus three steps is immaterial for purposes of dismissal.

2005). Plaintiff failed to properly take the steps mandated in GDC's grievance policy. (Exhibit 1, ¶¶ 37-39). As such, his actions must be dismissed.

**B.    "Unknown employee and agent" parties must be dismissed.**

Plaintiff asserts claims against "unknown employees and agents" of the Department of Corrections. (Complaint, p. 1). Plaintiff does not describe the employee/agent defendants in his Complaint, other than to state that these defendants "are involved in the development and implementation of [GDC's] execution procedures, including purchase, preparation, and administration of drugs designed to cause the death of the condemned." (Complaint, p. 6, ¶ 13). "[F]ictitious party practice is not permitted in federal court." *New v. Sports & Rec.,* 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *see also Lewis v. City of Montgomery,* No. 2:04-CV-858-WKW, 2006 U.S. Dist. LEXIS 44378, 2006 WL 1761673, at *2 (M.D. Ala. June 27, 2006) ("In general, 'fictitious-party pleading is not permitted in federal court.'"). While courts have sometimes made exceptions when the plaintiff may be able to describe an individual without stating his or her name precisely or correctly, Plaintiff has not provided sufficient descriptions of the employee/agent defendants in this case. *See Dean v. Barber,* 951 F.2d 1210, 1215-16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of the Jefferson County Jail John Doe" sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be

identified for service). Thus, this exception does not apply and the defendants named as "unknown employees and agents" are required to be dismissed.

### C.   Plaintiff lacks standing.

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Camp Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quotations and citations omitted). The party invoking federal jurisdiction has the burden of proving standing. *National Alliance for the Mentally Ill*, 376 F.3d 1292, 1294 (11th Cir. 2004).  To establish standing, the plaintiff must demonstrate three constitutional requirements. First, the plaintiff must show "an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent." *Camp Legal Defense Fund, Inc.*, 451 F.3d at 1269 (quotations and citations omitted).  To meet the actual injury requirement, the plaintiff must "show that he personally has suffered some actual or threatened injury." *Id.*  Second, the plaintiff must demonstrate a causal connection by showing that the injury is fairly traceable to the alleged unlawful conduct. *Id.*; *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990). Finally, the plaintiff must establish that the requested relief would likely redress his injury. *Id.*

Plaintiff does not have standing to seek injunctive relief because he has no "real and immediate – as opposed to a merely conjectural or hypothetical – threat

of future injury." *Williams v. Bd. of Regents*, 477 F.3d 1282, 1302-1303 (11th Cir. 2007) (*quoting Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)).  Standing represents a jurisdictional requirement that remains open to review at all stages of the litigation.  *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1427 (11th Cir. 1998).

Plaintiff seeks to enjoin Defendants from carrying out his execution. (Complaint, p. 21).  Plaintiff has no standing as there is no execution date set for this Court to enjoin.[3]  On January 27, 2011, an order was entered pursuant to O.C.G.A. § 17-10-40, setting a date for Plaintiff's execution on or before February 16, 2011. (See Order from Superior Court of Chatham County, a true and accurate copy of which is attached hereto as Exhibit 2). Plaintiff, however, subsequently obtained a modified order for access to evidence to determine the "viability of any item of biological evidence for DNA testing and comparison." (See Modified Order form Superior Court of Chatham County, February 4, 2011, a true and accurate copy of which is attached hereto as Exhibit 3).  On this same date, Plaintiff sought and was granted an order staying his execution from the Georgia Board of Pardon and Paroles ("P&P") pending "additional time" to "examine the substance of the claims offered and any additional evidence that becomes

---

[3] Plaintiff admits that there is not an execution currently scheduled. (Complaint, p. 5, ¶ 10).

available." (See Order from Pardons and Paroles ("P&P"), February 4, 2011, a true and accurate copy of which is attached hereto as Exhibit 4).

Importantly, the order issued by P&P stays Plaintiff's execution until "midnight on the 17th day of February, 2011," unless otherwise lifted by the Board. (Id.)  Thus, as the original order of execution from Chatham County expires one day *prior* to the date the stay expires, on February 16, 2011, no order for Plaintiff's execution exists. (Exhibits 2, 4).  Plaintiff thus has no standing to the relief he seeks and his motion should be denied.

To the extent that Plaintiff is seeking relief for an execution order that *may be* entered at a future date, his motion fails for the reasons set forth below.

> D.    **Plaintiff fails to state a claim for which relief can be granted.**

Even on a motion to dismiss Plaintiff is not entitled to the benefit of legal conclusions and other conclusory allegations in the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (explaining that "[a]lthough . . . [courts] must take all factual allegations in the complaint as true, [courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *quoting Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950.

The Eighth Amendment to the United States Constitution, applicable to the States through the Due Process Clause of the Fourteenth Amendment, *see Robinson v. California*, 370 U.S. 660, 666 (1962),  prohibits the infliction of "cruel and unusual punishments." U.S. Const. amends. XVIII. The Constitution, however, does not "demand an avoidance of all risk of pain in carrying out executions." *Baze v. Rees*, 553 U.S. 35, 47 (2008).  To establish a violation of an Eighth Amendment right, Plaintiff must establish that the "risk must be sure or very likely to cause serious illness and needless suffering." *Id.* at 49-50 (*quoting Helling v. McKinney*, 509 U.S. 25, 33-35 (1993).  In *Iqbal*, the Supreme Court reiterated that legal conclusions unsupported by well-plead factual allegations are not entitled to the assumption of truth. 129 S. Ct. at 1950.

Here, Plaintiff asserts that his speculation regarding expiration dates based on the fact of a company name change amounts to a well-pled factual allegation. Plaintiff's assertion is without merit.  Rather, his Complaint contains conclusory statements of a violation of his Eighth Amendment rights because "the labels, company records, and EU and UK regulatory law" show that the thiopental "is almost certainly expired." (Complaint, ¶ 2).  Plaintiff's conclusory claims are simply not supported by the factual allegations contained in his Complaint. Moreover, his factual allegations fail to establish that the thiopental in the

possession of the GDC is "sure or very likely to cause serious illness and needless suffering."

### 1.    Labels

Plaintiff's conclusory statement that the label on the Georgia Department of Corrections' ("GDC") current supply of thiopental is "almost certainly inaccurate" is not supported by the facts alleged in his Complaint. (Complaint, ¶ 3).  Instead, Plaintiff bases his conclusion on the unsupported *premises* that GDC's stock of thiopental could not have been produced earlier than February 2010, and that Link Pharmaceuticals "has not existed" since 2007. (Id.)  Plaintiff's alleged facts simply do not support this conclusion. According to the documentation provided by Plaintiff, Archimedes Pharma UK Limited (which was originally called Denacroft Limited, but changed its name to Link Pharmaceuticals) changed its name yet again to Archimedes Pharma UK Limited in 2007. (Complaint, Appendix E). All companies, Archimedies Pharma UK, Denacroft, Link Pharmaceuticals, and Archimedes Pharm UK Limited are under the ownership of Link Holding*s*, Ltd. (Id.)

An allegation that a corporation changed its name simply does not support a conclusion that a concomitant change occurred in marketing or labeling of thiopental at the distribution level.  In fact, nothing in Plaintiff's tome of appendices relates any factual allegation that once the corporate name was changed

(for the third time), that all marketing, labeling, and distribution labels were likewise changed.  The continuation of a brand name after a corporate buyout or name change is not uncommon, e.g. Ford's purchase of Volvo.  More importantly, Plaintiff does not and cannot allege that the corporate name change caused, or even should have caused, an automatic change in the labeling of thiopental.

Evidence submitted by Plaintiff's counsel in the first action, Case No 2011CV195436, refutes his current conclusions. [4]  The label on the thiopental in GDC's possession reflects the marking authorization number of PL 12406/0014. (Complaint, Appendix D).  This number was assigned to Link Pharmaceuticals in 1999, specifically for its distribution of thiopental. (See Statement of Michael Clark, Archimedes Pharma, November 12, 2010, p. 4, ¶ 8, a true and accurate copy of which was submitted as "Appendix 13" by Plaintiff's counsel in Case No. 2011CV195436, attached hereto as Exhibit 8).

Marketing authorization number PL 12406/0014 was renewed in 2003, remains in force indefinitely, and is the *same marking authorization number that is currently assigned to Archimedes*. (Id.) See also the summary of Archimedes products at www.medicines.org.uk/emc/medicine/14338/SPC/Thiopental injection,

---

[4] While matters outside the pleading may not be submitted on a Motion to Dismiss, Defendants include evidence in this section of their brief solely for clarity of the issues that Plaintiff intertwines with his TRO motion.

attached hereto as Exhibit 9).  Thus, it appears that Archimedes still markets drugs under the Link name.  Nothing alleged by Plaintiff refutes this appearance.

### 2.      Company Records

Plaintiff offers nothing with respect to "company records" other than the documents showing that a corporate name change was effectuated. For the reasons discussed, *supra*, these allegations fail to state a claim of an Eighth Amendment violation.

### 3.      EU and UK regulatory law

It appears that Plaintiff attempts to allege that a purported failure by Link Pharmaceuticals to notify a regulatory agency in the United Kingdom of the above-referenced name change to Archimedes has some bearing on his claims. (Complaint, ¶¶ 21-23).  Even assuming, *arguendo*, that Archimedes/Link failed to timely notify a regulatory agency based in the United Kingdom of a corporate name change, Plaintiff's facts, as alleged, fail to state any claim that the thiopental possessed by GDC and used successfully in two executions is somehow adulterated or otherwise not efficacious.

### E.      Plaintiff's request for injunctive relief is barred by the PLRA.

Even if Plaintiff had properly exhausted his administrative remedies, the relief he is seeking is not permitted by the PLRA.

The PLRA dramatically altered the relief that may be awarded in prison litigation and is consistent with the Supreme Court's view that federal courts should have reduced involvement in state prison systems. *Parrish v. Ala. Dep't of Corrections*, 156 F.3d 1128, 1129 n.2 (11th Cir. 1998).  In this regard, the PLRA limits the scope of a court's authority to enter prospective relief.[5]  18 U.S.C. § 3626(a)(1). A prerequisite to the imposition of any prospective relief is the finding of a violation of a constitutional right.  *Id.*; *and see Cason v. Seckinger*, 231 F.3d 777, 784 (11th Cir. 2000) (addressing standards applicable to termination of previously entered consent decree).

Here, Plaintiff is requesting a stay based on his speculation that the thiopental imported from a foreign source is "almost certainly expired." (Complaint, p. 4, ¶ 5).  He does not and cannot allege an actual violation of his federal rights as required by law for the relief he is requesting.

### F.    Plaintiff fails to show that a TRO is warranted.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should be not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Canal Authority of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974); *and see Munaf v. Green*, 552 U.S. 674, 690, 128 S. Ct. 2207, 2219 (2008)(citations and quotations omitted).

---

[5] The PLRA defines prospective relief as all relief other than compensatory monetary damages.

An injunction can issue only after the plaintiff has established that the conduct sought to be enjoined is illegal.

A temporary restraining order (TRO) or preliminary injunction is a drastic remedy used primarily for maintaining the status quo of the parties. *Cate v. Oldham,* 707 F.2d 1176, 1185 (11th Cir. 1983). A TRO or injunctive relief is only appropriate where the movant demonstrates that (1) there is a substantial likelihood of success on the merits; (2) the TRO or injunction is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm that the TRO or injunction would cause to the non-movant; and (4) the TRO or injunction would not be adverse to the public interest. *Parker v. State Board of Pardons and Paroles,* 275 F.2d 1032, 1035 (11th Cir. 2001). "The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *see also Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

### 1.    Plaintiff is not likely to succeed on the merits.

Plaintiff cannot show that he is likely to prevail on the merits of his claim as he fails to state any claim warranting relief and because speculations alone are insufficient to warrant the relief sought. *See Brewer v. Landrigan*, 131 S. Ct. 445 (2010)("speculation cannot substitute for evidence that the use of drug is "'sure or

---

18 U.S.C. § 3626(g).

very likely to cause serious illness and needless suffering.'")(*citing Baze v. Rees*, 553 U.S. 25, 33, 113 S. Ct. 2475 (1993)).

Here, Plaintiff merely speculates about the effect of a foreign obtained drug. Nothing that Plaintiff asserts establishes that the thiopental in GDC's possession is expired, adulterated, or otherwise inefficacious.  (See Complaint with Appendices, Plaintiff's Motion for a TRO).  Plaintiff assertions, at most, are speculations about the thiopental's potency *IF* it is in fact expired. (Id.)

Plaintiff's asserted speculations are precisely the type of conjecture the Supreme Court of the United States has expressly disavowed as grounds for a stay of execution. *Brewer v. Landrigan*, 131 S. Ct. 445 (2010).  In *Landrigan*, the District Court for Arizona granted a TRO based on the plaintiff's claims that the state procured thiopental manufactured by a foreign source and not approved by the FDA created a substantial and unnecessary risk of harm. *Landrigan v. Brewer*, 2010 U.S. Dist. LEXIS 113485 (D. Ariz. Oct. 25, 2010).  One day later, however, the Supreme Court vacated the order, noting that "speculation cannot substitute for evidence that the use of the drug is "'sure or very likely sure to cause serious illness and needless suffering.'" *Id.* (*citing Baze v. Rees*, 553 U.S. 35, 50 (2008)(*quoting Helling v. McKinney*, 509 U.S. 25, 33 (1993)).

Plaintiff has proffered no evidence showing that he is entitled to injunctive relief.  Rather, he speculates that foreign obtained chemicals may be tainted and

theorizes that the chemical may be less than effective. (Id.)  Speculation and

theory, however, do not rise to the "offer of proof" necessary under *Landrigan*.

### 2.    Plaintiff cannot show that he will suffer irreparable injury.

Plaintiff is alleging that he *might* suffer injury *if* an execution is scheduled

and *if* the thiopental used in that execution is expired. (*See* Plaintiff's Motion for

TRO *generally*).  Plaintiff's conclusory allegations and speculations fail to make

any showing that he will suffer any injury, irreparable or otherwise.

"A showing of irreparable injury is the *sine qua non* of injunctive relief."

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)(per curiam)(quotations

and citations omitted). It cannot be presumed, even where there is a violation of

constitutional rights. *See id.* at 1177-1178.  In all cases, a movant for a temporary

injunction must present facts that show a "real and immediate" threat of

substantial, irreparable harm before a federal court will intervene. *See O'Shea v.*

*Littleton*, 414 U.S. 488, 494 (1974)(explaining that "[t]he injury or threat of injury

must be real and immediate, not conjectural or hypothetical"); *see also Church v.*

*City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)(providing that a party has

standing to seek injunctive relief only if the party alleges, and ultimately proves, a

real and immediate – as opposed to a merely conjectural or hypothetical – threat

of future injury").  The Eleventh Circuit has "emphasized on many occasions that

the asserted irreparable injury must be neither remote or speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176-1177 (quotations and citations omitted).

Plaintiff cannot meet his burden of showing irreparable injury.  Regardless of Plaintiff's speculation about labels and corporate name changing, the evidence shows that the thiopental in question has *already been effectively used by the State of Georgia in two executions*. (See Affidavit of Bruce Scott, ¶¶ 4-7).

Likewise, the Affidavit of Randall L. Tackett offered by Plaintiff contains nothing but speculation --- conjectures that are premised upon a fact that Plaintiff fails to establish. (*See generally*, Appendix B to Plaintiff's Complaint (it is my understanding…that this supply of Pentothal expires after forty-eight months from manufacture," ¶ 5; "it is my understanding… that the supply came from a company that ceased to exist," ¶ 6).  These conjectures, however, are of no evidentiary value as they are assumptions based on theories, not evidence – speculations of "what if."

Speculation, however, is not evidence. *Brewer v. Landrigan*, 131 S. Ct. 445 (2010).  Plaintiff's speculations, conjectures, and theories fail, in any manner, to suffice as an offer of proof showing that the thiopental that *may* be used *if* another execution order is entered is "sure or very likely sure to cause serious illness and needless suffering" as is required to prevail on his motion. *Id.*  Moreover, the successful use of the thiopental in two executions, in other words *the evidence*,

cannot be overcome by Plaintiff's speculation as to the efficacy, purity, and authenticity of the thiopental.

### 3. The harm of a TRO to the State outweighs any potential injury to Plaintiff.

"It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of prisons." *Preiser v. Rodriquez*, 411 U.S. 475, 491-492 (1973).

A stay "is not available as a matter of right and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 126 S. Ct. 2096, 2104 (2006).

Here, the GDC is charged with the duty of carrying out all executions for the State of Georgia. O.C.G.A. § 17-10-40. Thus, great deference should be awarded to the GDC in its management of its statutory responsibilities – particularly in light of the fact that both state and federal courts in Georgia have considered, reviewed, and scrutinized the GDC's method of execution and found it to be constitutional[6]

---

[6] *See Crowe v. Terry*, 426 F. Supp.2d 1310, 1351-54 (N.D. Ga. 2005), aff'd *Crowe v. Hall,* 490 F.3d 840 (11th Cir. 2007)*; Williams v. State,* 281 Ga. 87, 910 (2006); *Walker* v. State, 281 Ga. 157, 161 (2006); *Nance v. State*, 280 Ga. 125, 127 (2005), *cert. denied* 127 S. Ct. 168 (2006); *Lewis v. State*, 279 Ga. 756, 766 (2005); *Riley v. State*, 278 Ga. 677 (2004); *Franks v. State*, 278 Ga. 246 (2004); *Braley v. State*, 276 Ga. 47, 56 (2002); *Hightower v. Donald*, No. 07cv135682, Fulton Superior Court (June 25, 2007), *appeal denied*, Georgia Supreme Court, S07D1530, June 27, 2007; *Alderman v. Donald,* No. 1:07cv1474, Northern District of Georgia, (May 2, 2008).

and because Georgia State Courts and the Supreme Court of the United States have refused to allow injunctive relief for the identical claims made in this action. (Exhibits 5, 6; *and see Brewer v. Landrigan,* 131 S. Ct. 445 (2010)).

On a motion for an injunction, Plaintiff bears the burden of showing that his perceived injuries outweigh the damage that the injunction might cause to Defendants. *Cate v. Oldham*, 707-F.2d 1176, 1185 (11th Cir. 1983). Plaintiff does not have an execution scheduled, and as such, the denial of a TRO will have no bearing on when and if he is ultimately executed by the State. Plaintiff, moreover, has provided no evidence of actual harm. Thus, the scale weighs heavily against the grant of his motion.

### 4. A TRO will not serve the public interest.

The granting of Plaintiff's motion would not serve the public interest.[7]  In contrast, the State's ability to perform its statutory mandate of an execution based on the verdict of the people of the State undeniably serves the public interest.  The people of the State of Georgia lawfully determined Plaintiff's guilt and punishment. A granting of Plaintiff's motion would only work to subvert this lawful determination.

---

[7] This is especially so given that Plaintiff has failed to exhaust his administrative remedies and the granting of relief prior to proper exhaustion would completely circumvent the congressional intent behind the PLRA.

The case of *Jones v. Allen*, 485 F.3d 635 (11th Cir. 2007), *cert. denied*, 127 S. Ct. 2160 (2007), provides guidance in this regard.  *Jones* involved a plaintiff under an order of execution who filed a civil action challenging the three drug protocol used for execution in Alabama. *Id.*  The Eleventh Circuit concluded that Jones' suit "[left] little doubt that the real purpose behind his claim is to seek a delay in his execution, not merely to effect an alteration of the manner in which it is carried out." *Id.* (*citing Harris v. Johnson*, 376 F.3d 414, 418 (5th Cir. 2004)). The Court noted that a grant of stay would "allow Jones to proceed in his [civil] challenge in the district court," delay the implementation of the State's judgment for many months," and thus, Jones "in essence, would receive a reprieve from his judgment." *Id.*  This, the court concluded, is a commutation of a death sentence and as such, the court declined to interfere with the state's strong interest of enforcing its judgment. *Id.*

Plaintiff, like the inmate in *Jones*, is simply attempting a *de facto* commutation of his sentence.  The public, however, will not be served if this Court allows speculation, theories, and conjectures to thwart the State's strong interest in enforcing its criminal judgment against Plaintiff.

## III.   CONCLUSION

For the above and foregoing reasons, Plaintiff's Complaint should be dismissed and this Court should not grant his Motion for a Temporary Restraining Order.

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2011, I electronically filed **Defendants Special Appearance Pre-Answer Motion to Dismiss and Defendants' Special Appearance Response to Plaintiff's Motion for a Temporary Restraining Order**, with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing the following attorneys of record:

William R. Montross, Jr.
Patrick Mulvaney
Southern Center for Human Rights
83 Poplar Street, NW
Atlanta, Georgia 30303

SAMUEL S. OLENS                     551540
Attorney General

MARY BETH WESTMORELAND   750150
Deputy Attorney General

/s/ Joseph Drolet                          231000
Senior Assistant Attorney General

/s/ Tina M. Piper                           142469
Assistant Attorney General

Please Address All
Communications To:
JOSEPH DROLET
Sr. Assistant Attorney General
TINA M. PIPER
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Telephone: (404) 656-0749
Facsimile:  (404) 463-8864
Email: jdrolet @law.ga.gov; tpiper@law.ga.gov

## CERTIFICATION AS TO FONT

Pursuant to N.D. Ga. Local Rule 7.1 D, I hereby certify that this document is submitted in Times New Roman 14 point type as required by N.D. Ga. Local Rule 5.1(b).

/s/ Tina M. Piper
Georgia Bar                142469