IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

FEB 15 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

| | | |
|---|---|---|
| ROY BLANKENSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NUMBER 1:11-cv-429-TCB |
| BRIAN OWENS, CARL HUMPHREY, | ) | |
| and OTHER UNKNOWN | ) | |
| EMPLOYEES AND AGENTS, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court are Plaintiff Roy Blankenship's motion for temporary restraining order and stay of execution [5] and Defendants' motion to dismiss [6].

## I.   Background

In the 1980s, Roy Blankenship was convicted of felony murder, rape and burglary and sentenced to death three times.  In 1988, the Georgia Supreme Court affirmed his third conviction and death sentence. *Blankenship v. State*, 258 Ga. 43, 365 S.E.2d 265 (1988).  The following

facts are taken from one of Blankenship's prior appeals, *Blankenship v. State*, 247 Ga. 590, 590, 277 S.E.2d 505, 507 (1981).

## A.   Blankenship's Criminal Case

In the early morning hours of March 2, 1978, Blankenship left a bar at which he had been drinking and began to walk home.  As he walked past the victim's upstairs apartment, he decided that he wanted to break in.  The victim, Sarah Mims Bowen, was a seventy-eight-year-old female for whom Blankenship had done repair work.  He climbed up a railing to a porch of her apartment where he kicked out the lower pane of a window.  After waiting and watching briefly, he entered the apartment.  Bowen, who suffered from a respiratory illness, was sitting in a chair because she had trouble breathing when she slept.

Blankenship came up behind Bowen and grabbed her by placing his hand over her mouth and nose to keep her from screaming.  She struggled and fell from the chair, and he fell on top of her.  Bowen became unconscious, and Blankenship picked her up and took her back to her bed, where he raped her.  He then dressed and left Bowen's apartment the same way that he entered it.

Neighbors concerned about Bowen due to her poor health eventually discovered her body. She had been severely beaten, scratched, bitten and forcibly raped.

Footprints left by an unusually patterned sole were found at the scene and led toward Blankenship's house. His fingerprints were also found at the scene, and shoes identical to the type that made the prints were recovered from his possession. After he was arrested by police, Blankenship made a confession; however, he denied that he beat Bowen severely, and at trial he recanted part of his confession and stated that he was unable to consummate the rape.

Forensic evidence established that Bowen died from heart failure brought on by the trauma. Scrapings taken from the fingernails of the victim established that her attacker had international type O blood, the same as Blankenship.

### B.    Blankenship's Execution Schedule

On January 27, 2011, the Superior Court of Chatham County issued an order directing the Georgia Department of Corrections (the "GDOC") to execute Blankenship between noon on February 9 and noon on February 16. On February 4, the Superior Court of Chatham County ordered certain

evidence presented for testing to determine what evidence was amenable to DNA testing. That same day, the Georgia Board of Pardons and Paroles stayed Blankenship's execution through midnight on February 17, finding that additional time was required by the board to examine the substance of the claims offered and any additional evidence that becomes available. Attached to the stay of execution was an official report from the Georgia Bureau of Investigation reporting that visual inspection of the evidence it received from the Chatham County District Attorney's office indicated that the evidence was amenable to DNA testing.[1]   In the order staying Blankenship's execution, the board indicated that it might lift the stay prior to February 17.

## C.   Lethal Injection in Georgia

Georgia law provides for death by lethal injection.  O.C.G.A § 17-10-38(a) reads as follows:

---

[1] According to an online newspaper article reporting on the stay, Blankenship's execution was stayed so that DNA testing could be performed on blood samples recovered from under the victim's fingernails.  Blankenship contends that while he was at the apartment that night, another man raped and killed Bowen.  He pushed for the DNA testing because the scrapings taken from underneath Bowen's torn fingernails revealed blood antigens that matched neither Bowen's nor Blankenship's blood type. *See* Bill Rankin, *Parole board stays execution—DNA testing expected*, THE ATLANTA JOURNAL-CONSTITUTION (Feb. 4, 2011), http://www.ajc.com/news/atlanta/parole-board-stays-execution-827830.html.

> All persons who have been convicted of a capital offense and have had imposed upon them a sentence of death shall suffer such punishment by lethal injection. Lethal injection is the continuous intravenous injection of a substance or substances sufficient to cause death into the body of the person sentenced to death until such person is dead.

The statute does not specify the actual drugs to be used or how they are to be administered. GDOC has promulgated the lethal injection procedure, a copy of which is attached as Appendix C to Blankenship's complaint.

According to GDOC procedure, lethal injection in Georgia (like almost every state that uses lethal injection) is performed through the use of three drugs. First, two grams of sodium pentothal, the anesthetic, is administered. Second, fifty milligrams of pancuronium bromide, a muscle relaxer, is administered. Finally, 120 milliequivalents of potassium chloride, a drug that induces cardiac arrest, is injected. During this process, an IV nurse monitors the progress of the injections to ensure proper delivery and to monitor for signs of consciousness.

**D.   This Action**

On February 11, 2011, Blankenship filed this suit against Defendants Brian Owens (commissioner of GDOC), Carl Humphrey (warden of the Georgia Diagnostic and Classification Prison), and other unknown

employees and agents of GDOC. Blankenship's claim is brought pursuant to 42 U.S.C. § 1983. He contends that Defendants' sodium pentothal—the anesthetic ingredient in the three-drug regimen—has expired. According to Blankenship, if Defendants proceed with his execution, he will suffer excruciating pain during the execution, in violation of the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment.

Blankenship prays for (1) a temporary restraining order or preliminary injunction staying his execution during the pendency of this litigation; (2) expedited discovery; (3) a declaratory judgment that Defendants' use of their current supply of sodium pentothal in his execution would violate the Eighth Amendment's prohibition against cruel and unusual punishment; and (4) reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

On February 14, Defendants filed a motion to dismiss and a brief in opposition to Blankenship's motion for injunctive relief. They contend that Blankenship's complaint must be dismissed because he failed to exhaust his administrative remedies, lacks standing, and has failed to state a claim upon which relief can be granted. That same day, the Court held a hearing

on Blankenship's motion for injunctive relief and Defendants' motion to dismiss.

## II.   Eighth Amendment: Conditions of Confinement

### A.   Jurisdiction

In *Hill v. McDonough*, 547 U.S. 573, 579-80 (2006), and *Nelson v. Campbell*, 541 U.S. 637, 643-44 (2004), the Supreme Court recognized that federal courts have jurisdiction over the type of § 1983 claim that Blankenship pleads in his complaint, i.e., the Supreme Court held that such claims should not always be dismissed as successive habeas corpus petitions.   Defendants conceded during the hearing that § 1983 is the appropriate statute under which Blankenship can bring his claim.

### B.   Type of Eighth Amendment Claim

The Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs. *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).   The Supreme Court has categorized Blankenship's Eighth Amendment challenge to Georgia's lethal injection drug protocol as a challenge to the conditions of his confinement. *See Hill*, 547 U.S. at 579-80 (permitting inmate's § 1983 claim to proceed as an

Eighth Amendment challenge to his conditions of confinement because inmate did not challenge lethal injection sentence as a general matter but sought only to enjoin defendants from executing him in the manner they then intended); *Nelson*, 541 U.S. at 643-44 (noting that the parties agreed that the inmate's § 1983 suit was a valid Eighth Amendment conditions-of-confinement claim and that "deliberate indifference" was the appropriate standard to apply to defendants' conduct).

To establish such a claim, Blankenship carries the burden of showing that Defendants' intent to use allegedly expired sodium pentothal is a condition of confinement that (1) objectively amounts to an "extreme deprivation" violating contemporary standards of decency, and (2) shows that Defendants' subjective state of mind is one of deliberate indifference. *Thomas*, 614 F.3d at 1306-07.

## III.  Defendants' Motion to Dismiss [6]

The Court first addresses the merits of Defendants' motion to dismiss. As stated above, Defendants contend that Blankenship's complaint should be dismissed because he failed to exhaust his administrative remedies, lacks standing, and failed to state a viable Eighth Amendment claim.

8

## A.   Exhaustion of Remedies

The Prison Litigation Reform Act (the "PLRA") mandates that an inmate exhaust all administrative remedies prior to filing *any* action asserting an Eighth Amendment violation.   42 U.S.C. § 1997e(a); *Chandler v. Crosby,* 379 F.3d 1278, 1286 (11th Cir. 2004).   Indeed, § 1997e(a) explicitly states that "*[n]o* action shall be brought with respect to prison conditions . . . *until* such administrative remedies as are available are exhausted." (Emphasis added); *see also Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (holding that exhaustion is mandatory for any suit challenging prison conditions, even where the relief sought cannot be granted by the administrative process); *accord Alexander v. Hawk,* 159 F.3d 1321, 1325-26 (11th Cir. 2008) (holding that the PLRA exhaustion requirement is mandatory, even if futile, and that courts cannot waive the exhaustion requirement).

In his complaint, Blankenship avers that he exhausted his administrative remedies by filing an administrative grievance in accordance with GDOC's procedures.   The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."

*Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, Blankenship's averment in his complaint is sufficient absent contrary proof from Defendants, who may present such evidence in a Fed. R. Civ. P. 12(b) motion to dismiss. *See Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (holding that an exhaustion defense should be raised in a motion to dismiss).

Defendants contend that GDOC maintains a grievance process that is available to all inmates, including Blankenship, and they append to their motion a copy of GDOC's statewide grievance procedure (the "SGP"). Section VI(A)(5) of the SGP defines grievable issues as "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections, other than those listed above [referencing the list of non-grievable issues], may be grieved." The SGP also provides for emergency grievances. An emergency grievance is defined as "an unexpected situation involving the health, safety or welfare of an inmate that requires prompt action."

Completion of the GDOC grievance process is a three-step process. First, the inmate must file an informal grievance, then a formal grievance, and finally an appeal of the warden's decision on the formal grievance. An appeal from the warden's decision is forwarded to the commissioner's

office, which has ninety days within which to rule on the appeal. Inmates are given an oral explanation of the grievance procedure, and they also receive an inmate handbook that includes instructions about the procedure. Informal grievance forms are available in all living units, and inmates in isolation or segregated areas can obtain forms from either the officer on duty or their dorm counselors, who are available on a regular basis.

Emergency grievances are immediately referred to a grievance coordinator or duty officer who determines if the grievance is indeed an emergency. If so, he or she will immediately take whatever action is necessary to protect the health, safety or welfare of the inmate, and an inmate will receive a written response to his emergency grievance within five days. If the grievance is determined not to be an emergency, it is returned to the inmate, who must then file an informal grievance, either complaining about the original issue or that his emergency grievance was not treated as such.

Defendants contend that Blankenship failed to exhaust his administrative remedies prior to filing this action, as he filed only an informal grievance.

Blankenship points out that he filed his informal grievance on February 10 and his formal grievance on February 14—the day of the hearing. Regardless, he argues that his contention that the sodium pentothal is expired and ineffective is non-grievable based on Defendants' rejection of his informal grievance. According to the affidavit of Victoria Malone, the deputy warden of care and treatment at the Georgia Diagnostic and Classification Prison, Defendants rejected Blankenship's grievance on the basis that a "grievance for events that have not occurred is prohibited by policy." Blankenship contends that this response indicates that the referenced "event[]" is his execution and that it is impossible for him to pursue the grievance process to challenge his execution after it has occurred.

Analysis of a motion to dismiss for failure to exhaust administrative remedies is a two-step process. First, the Court must look to the factual allegations in Defendants' motion and Blankenship's response, and if they conflict, the Court accepts Blankenship's version of the facts as true. If the complaint is not subject to dismissal at the first step, the Court makes specific findings that resolve the disputed factual issues related to exhaustion. *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

Turning to the first step, comparison of the facts in Defendants' motion with Blankenship's response shows that the facts are not in dispute: Blankenship has not completed the grievance process. This suggests that his complaint should be dismissed. However, as noted above, Blankenship contends that although he has not completed the process, his failure to do so should be excused because his grievance is "non-grievable" due to Defendants' alleged requirement that Blankenship pursue the grievance process after his execution. The Court disagrees.

Blankenship's grievance falls squarely within the SGP's definition of grievable issues, which are "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections . . . ." Blankenship is challenging a lethal injection drug, and GDOC *does* have control over the drugs used in an execution. Furthermore, Blankenship's grievance is not within the list of non-grievable issues included in the Section VI(A)(4) of the SGP. The only possible subsection that could apply is subsection (a), which identifies as a non-grievable issue matters over which GDOC has no control. But again, GDOC does control the challenged drug. *Cf. Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (finding inmate's grievance non-grievable and exempt from the

13

exhaustion requirement because the Tennessee Department of Correction had an explicit rule against his type of complaint being considered a grievance subject to the normal grievance process). Thus, regardless of Defendants' stated reason for rejecting his grievance (which he can challenge by continuing with the three-step grievance process), Blankenship's grievance is covered by the SGP, and thus the exhaustion requirement is not excused.

During the hearing, Blankenship also argued that he is not required to exhaust his administrative remedies because they are not actually available to him. He again relies on Defendants' stated reason for rejecting his informal grievance ("grievance for events that have not occurred is prohibited by policy") and asserts that a process that requires him to pursue his grievance after his execution is not "available" as contemplated by 42 U.S.C. § 1997e, so the exhaustion-of-remedies requirement is inapplicable.

It is unclear to the Court whether Defendants' stated reason for rejecting Blankenship's grievance means that Blankenship's grievance will

not be considered until his execution is scheduled or until he is executed.[2] Defendants have not provided an interpretation, and Blankenship's interpretation is not necessarily the only logical one based on the evidence before the Court.[3]    Regardless, Defendants' stated reason for rejecting Blankenship's informal grievance does not make the grievance process unavailable to him. At most, it shows that completing the process is futile, but the PLRA and binding case law still require exhaustion. *See* 42 U.S.C. § 1997e(a) ("*No* action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted.") (emphasis added); *see also Woodford*, 548 U.S. at 85 (holding that exhaustion is mandatory for any suit challenging prison conditions, even where the relief sought cannot be granted by the administrative process);

---

[2] If indeed the latter interpretation is correct, i.e., Blankenship's informal grievance was dismissed as untimely because he had not yet been executed, that interpretation is absurd. However, the PLRA does not permit a federal court to excuse the exhaustion requirement because it finds the process absurd or futile. *See Woodford*, 548 U.S. at 85 (holding that exhaustion is mandatory for any suit challenging prison conditions, even where the relief sought cannot be granted by the administrative process); *accord Alexander*, 159 F.3d at 1325-26 (holding that the PLRA exhaustion requirement is mandatory, even if futile, and that courts cannot waive the exhaustion requirement).

[3] As indicated above, Defendants' stated explanation for rejecting Blankenship's informal grievance is set forth in Ms. Malone's affidavit, and Defendants did not elaborate on her explanation in their brief. Furthermore, the Court does not know how the rejection was communicated to Blankenship and thus whether it was in writing. The SGP states that Blankenship should receive a written response within ten calendar days of the counselor's receipt of the grievance.

*accord Alexander*, 159 F.3d at 1325-26 (holding that the PLRA exhaustion requirement is mandatory, even if futile, and that courts cannot waive the exhaustion requirement).

Blankenship also argues that the process is unavailable to him because it does not provide resolution in a timely manner for a grievance that is time-sensitive. He points to the ninety days that the commissioner's office has to respond to an appeal of the denial of a formal grievance. While Blankenship is correct that this time period could make the process unavailable to him, as of today it does not. His execution has been stayed until midnight on February 17, which is past the noon, February 16 deadline set by the superior court's execution order.[4] Thus, based on the facts currently before the Court, Blankenship has not shown that there is not sufficient time to complete the process.[5]

---

[4] Moreover, in less than twenty-four hours, the execution order will expire and GDOC will not be able to reschedule Blankenship's execution until the superior court issues a new order. Thus, Blankenship's time argument will carry even less weight after noon tomorrow.

[5] If time is really of the essence, as Blankenship argues throughout his filings, the Court notes that the SGP provides for an emergency grievance process. An emergency grievance is defined as "an unexpected situation involving the health, safety or welfare of an inmate that requires prompt action," and Blankenship's grievance appears to fit within this definition. Blankenship only recently learned that the sodium pentothal may be expired, and because sodium pentothal will be used in his execution, it obviously impacts his health, safety or welfare.

The one wrinkle, of course, is that Blankenship's execution is currently stayed, suggesting that prompt action is not required. Nonetheless, Blankenship's appeal to this

Thus, looking at the facts as interpreted by Blankenship, the Court finds that his complaint must be dismissed for failure to exhaust administrative remedies.   It is undisputed that Blankenship has not completed the grievance process, and his arguments that his grievance is non-grievable and that the grievance process is not available to him are without merit.

## B.   Standing

Defendants also contend that Blankenship's complaint must be dismissed because he lacks standing, specifically, that he cannot show an actual or imminent injury because his execution currently is not scheduled. However, Eleventh Circuit and this Court's case law make clear that Blankenship does have standing.   For purposes of determining standing, Blankenship's execution became imminent upon the conclusion of his § 2254 proceedings, *Grayson v. Allen*, 491 F.3d 1318, 1325 (11th Cir. 2007), and his § 1983 method-of-execution claim accrued the moment he had notice of potential issues with the sodium pentothal.   *Crowe v. Donald*, 528 F.3d 1290, 1293 (11th Cir. 2008) ("a method of execution claim accrues on

---

Court for injunctive relief staying his execution suggests that he at least thinks prompt action is required and that he could have filed an emergency grievance if he felt the time constraints of the normal process were at issue.

the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol") (quoting *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008)).

Furthermore, "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Crowe*, 528 F.3d at 1292. In Georgia, this period is two years, *id.*, so it behooves Blankenship to bring this claim as soon as possible. Finally, inmates who have waited until their execution is scheduled to bring § 1983 method of execution claims usually have their claims dismissed for unnecessary delay. *Grayson*, 491 F.3d at 1325.

Accordingly, Blankenship's § 1983 claim has accrued, his execution became imminent when state review was completed, and he must bring his claim as soon as possible to avoid having it dismissed for inexcusable delay. Thus, he has standing, and the Court will deny Defendants' motion to dismiss for lack of standing.

### C.   Failure to State a Claim Upon Which Relief Can Be Granted

Defendants contend that Blankenship's complaint fails to state a viable § 1983 method-of-execution claim.   They assert that he must establish that the challenged method of execution is "sure or very likely to cause serious illness and needless suffering" and that his speculation about the sodium pentothal's expiration date based on a company name-change and European Union and United Kingdom regulatory law fails to satisfy his burden.

The sodium pentothal label provided by Defendants shows an expiration date of February 2014.   Blankenship contends that this date is incorrect and that the drug has very likely expired.   In support of his contention, he relies upon (1) change-of-name certificates filed in May 2007 by the drug manufacturer identified on the disputed label, Link Pharmaceuticals Ltd., that change its name to Archimedes Pharma UK Limited, and (2) European Union and United Kingdom regulatory law that requires the new name, Archimedes, to be included on all future labels after the name change.

Blankenship then extrapolates backwards from the February 2014 expiration date on the disputed label, and contends that the earliest the

sodium pentothal could have been manufactured is February 2010 (Archimedes's version of sodium pentothal has a forty-eight-month shelf life), almost three years after Link changed its name to Archimedes. Therefore, Blankenship contends, the name and address of the drug manufacturer on the drug label, i.e., Link, are incorrect, so there is no reason to believe that the expiration date is not incorrect as well.

A pleading must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The allegations in the complaint are presumed true at this stage, and all reasonable factual inferences must be construed in its favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *accord Lewis v. Brautigam*, 227 F.2d 124, 127

(5th Cir. 1955).[6]  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Fed. R. Civ. P. 8(a) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal punctuation and quotations omitted).  In further clarifying the *Twombly* standard, the Supreme Court has adopted a two-pronged approach when evaluating motions to dismiss: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1940-41 (2009).

Assuming all of the factual allegations in Blankenship's complaint are true, Blankenship fails to state a viable § 1983 claim.  The documents he provides show that the May 17, 2007 name change was just that—a name change filed with the United Kingdom's registrar of companies.  Further

---

[6] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

supporting the conclusion that the name was the only thing that changed (and not the nature of the involved entities' business), prior to changing its name Link filed a change of address form in its own name that listed Archimedes's address—the same address that is on the disputed label. Finally, the marketing authorization number on the label is the same marketing authorization number on Archimedes's website. Thus, at most, what Blankenship has proven is that Archimedes has not complied with EU and UK labeling laws. This, however, is not enough to support Blankenship's inference that the drug's expiration date is incorrect, i.e., Blankenship's factual allegations are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Blankenship's own expert, Randall L. Tackett, Ph.D., hedges on whether the expiration date is valid, qualifying his conclusions in paragraphs 5 and 6 of his affidavit with "it is my understanding." Specifically, it is his understanding that the sodium pentothal at issue expires forty-eight months[7] after the date of manufacture, and it is his understanding that on May 17, 2007, Link ceased to exist. Tackett's qualification of these facts undermines Blankenship's inference that the

---

[7] Blankenship's counsel stated during the hearing that different manufacturers have different shelf lives for sodium pentothal and that the sodium pentothal at issue has the longest shelf life (forty-eight months).

drug is expired and, more importantly, forces the Court to speculate as to whether the sodium pentothal is expired.  This, the Court cannot do.

Even Blankenship concedes that his own interpretation of the facts supports the conclusion that the drug is not expired.  If the last date that Link could have manufactured the sodium pentothal that Defendants have is May 2007, that batch of the drug would not expire until May 2011. Blankenship attempts to temper this negative side effect of his interpretation by presenting the Court with statistical interpretations. However, the statistics fail to lift Blankenship's interpretation of the facts and his right to relief above the speculative level.

Even if the Court were to find that the sodium pentothal was expired, Blankenship has failed to plead enough facts showing or supporting the inference that the expired drug creates a risk that is sure or very likely to cause serious illness or needless suffering.  To support his contention that expired sodium pentothal is less effective and will not fully anesthetize him, Blankenship relies exclusively on Tackett's affidavit, but again, Tackett's conclusions are equivocal at best.

For example, Tackett states in paragraph 10 that "[t]he rate of degradation of a drug is not often known because studies are not often

23

performed to determine this and it would be necessary to evaluate the storage conditions of the drug." He then says in paragraph 11 that "[i]t is impossible to project exactly how fast and to what degree a particular supply of sodium pentothal powder will lose its potency when its expiration date passes." Yet he asks this Court to conclude that there is an "extremely high risk that the use of expired sodium pentothal would cause [Blankenship] to experience excruciating pain . . . ."

Unfortunately for Blankenship, Tackett's conclusion is not supported by his previous statements, and thus Blankenship essentially asks the Court to speculate that the allegedly expired sodium pentothal is sure or very likely to cause him to needlessly suffer. The Supreme Court made clear in *Brewer v. Landrigan*, 131 S. Ct. 445 (2010), that an inmate fails to carry his burden if his proof requires speculation. Thus, Blankenship has failed to state a § 1983 claim that shows that Defendants' sodium pentothal is expired and that if expired he is sure or very likely to needlessly suffer.

### D.    Other Unknown Employees and Agents

Defendants also ask the Court to dismiss the Defendants identified as "other unknown employees and agents" of GDOC, arguing that fictitious party practice is generally not permitted in federal court. Defendants are

correct. Accordingly, the Court will grant their motion to dismiss the unidentified Defendants and drop them as parties to the suit.

## IV. Blankenship's Motion for Temporary Restraining Order and Stay of Execution [5]

Since the Court has found that Blankenship's § 1983 claim does not survive Defendants' motion to dismiss, his motion for a temporary restraining order and stay of execution must denied as moot. However, even if the Court were to find that Defendants' motion to dismiss should be denied, Blankenship's motion for a TRO and stay of execution would also be denied.

To show that he is entitled a TRO and stay of execution, Blankenship must demonstrate (1) irreparable harm to him unless the TRO is issued; (2) a substantial likelihood of success on the merits of his § 1983 claim; (3) that the threatened harm to him in the absence of an injunction outweighs the harm to Defendants if the Court issues an injunction; and (4) that the injunction will not disserve the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). "The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (internal citation and quotations omitted).

### A.    Irreparable Harm

Blankenship contends that he will suffer irreparable harm if Defendants use an expired supply of sodium pentothal.  To satisfy his burden of showing irreparable harm, Blankenship must present proof that (1) the drug is expired; (2) the expired drug is less effective; and (3) use of the expired drug is "sure or very likely to cause serious illness and needless suffering." *Landrigan*, 131 S. Ct. at 445.  Blankenship's ability to show irreparable harm hinges on whether the drug is expired, because if it is not expired, it prevents needless suffering. *See Baze v. Rees*, 553 U.S. 35, 44 (2008) (describing sodium pentothal is a "fast-acting barbiturate sedative that induces a deep, comalike unconsciousness when given in the amounts used for lethal injection.").

As discussed above in the Court's analysis of Defendants' motion to dismiss for failure to state a claim, Blankenship relies on labels and corporate name change certificates to support his contention that Defendants' supply of sodium pentothal is expired.  However, such evidence shows at most that by putting Link's name on the drug label, Archimedes has not complied with EU and UK labeling laws.  This proof, however, does not compel the conclusion that the drug is not what the label

says it is or that the expiration date is invalid. Indeed, the only allegedly erroneous information on the label is the name. Otherwise, Archimedes's information, i.e., the physical address and marketing authorization number, is correct. Thus, Blankenship's inference that the wrong name makes it "very likely" that the expiration date is wrong is nothing more than unreasonable speculation.

Even if Blankenship could show that it was sure or very likely that the sodium pentothal has expired, he has failed to show that the expired drug is less effective and that its use will therefore cause him to needlessly suffer. To show that expired sodium pentothal is less effective and will cause him to suffer needlessly, Blankenship relies exclusively on Tackett's affidavit.

In paragraphs 10 and 11 of his affidavit, Tackett discusses the point of expiration dates on drugs and the impact of expiration on the sodium pentothal. However, his testimony is hardly unequivocal. In paragraph 10 he says, "Generally, *most* drugs lose their potency . . . so the individual would be undermedicated. The rate of degradation of a drug is *often not known* because studies are not performed to determine this . . . ." (emphasis added). In paragraph 11, which addresses sodium pentothal specifically, he hedges on the impact of the expiration date's passing: "It is

impossible to project exactly how fast and to what degree a particular supply of sodium pentothal powder will lose its potency when its expiration date passes."

These two paragraphs do not show that the use of Defendants' sodium pentothal is sure or very likely to cause Blankenship needless suffering. Indeed, the Court is "left to speculate as to the risk of harm," and the Supreme Court explicitly held in *Landrigan*, 131 S. Ct. at 445, that "speculation cannot substitute for evidence that the use of the drug is 'sure or very likely to cause serious illness and needless suffering.'" (Citation omitted.) *See also Baze*, 553 U.S. at 50 ("Simply because an execution method *may* result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual.") (emphasis added). Consequently, Blankenship has failed to carry his burden of showing irreparable harm.

## B. Substantial Likelihood of Success on the Merits

Blankenship correctly asserts that to succeed on the merits of his § 1983 claim that use of the allegedly expired drug exposes him to risk of future harm, he must show that use of the drug creates a "substantial risk of

28

serious harm," that is, "an objectively intolerable risk of harm that prevents [Defendants] from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Baze*, 553 U.S. at 50.

As for the objective requirement, Blankenship contends that he has shown that Defendants' supply of sodium pentothal is most likely expired, that the drug when expired is less effective, and that using it creates a substantial risk of harm, as it would cause him to suffer excruciating pain during his execution.

As for the subjective requirement, Blankenship contends that Defendants cannot be subjectively blameless because on January 24, 2011, they were placed on notice that their supply was most likely expired, and every other state faced with expired anesthetics has decided not to proceed with scheduled executions.

Similar to their arguments above, Defendants respond that Blankenship has not shown that the drug is sure or very likely expired or less effective if expired. They contend that Blankenship's "proof" is nothing more than theory, conjecture and speculation.

Blankenship's proof fails to satisfy the objective inquiry. As discussed above regarding irreparable harm, his evidence is nothing more than

speculation that the sodium pentothal is expired, and if expired, that it is harmful. This is not enough to satisfy the burden of showing an objectively intolerable risk of harm. *See Baze*, 553 U.S. at 61-62 (finding that the Eighth Amendment prohibits "wanton exposure to objectively intolerable risk, not simply the possibility of pain."). Thus, Blankenship cannot show a substantial likelihood of success on the merits.

### C.    Balance of Harms

Blankenship contends that the balance of harms weighs heavily in his favor because the threatened injury to him is extremely serious, as the sodium pentothal is the only thing that separates Defendants' lethal injection process from torture. He argues that by contrast, Defendants would lose virtually nothing if a TRO were issued. They could still execute him and would "simply have to purchase a supply of sodium pentothal that has a valid, identifiable expiration date."

Defendants respond that they have a strong interest in carrying out the state's judgments, and that the Court must be sensitive to their strong interest in enforcing criminal judgments without undue interference from the federal courts. Defendants also contend that the harm to Blankenship if a TRO is not entered is tempered by the fact that his execution is not

currently scheduled, and most likely another execution order will have to be issued by the superior court, as the stay entered by the board of pardons and paroles expires on February 17, which is after February 16, the last date allowed by the superior court's order for Blankenship's execution.

Blankenship also fails to satisfy his burden on this element. According to the Supreme Court in *Nelson* and *Hill* and Eleventh Circuit precedent, Defendants have a strong interest in going forward with the execution of a condemned inmate, and consequently Blankenship is not entitled to a stay as a matter of right. *See Hill*, 547 U.S. at 584 (finding that a stay of execution is an equitable remedy and thus it must be sensitive to the state's "strong interest in enforcing its criminal judgment without undue interference from the federal courts.").

The potential harm Blankenship will suffer if the TRO is not entered does not trump Defendants' interest. First, as discussed extensively above, Blankenship has not shown that use of Defendants' current supply of sodium pentothal is sure or very likely to cause him to suffer needlessly. Thus, the threatened injury is not extremely serious, as he contends. Also, as Defendants point out, there is not a currently scheduled execution for the Court to enjoin, and Blankenship has not addressed how the Court

should handle the board's stay of execution so that the Court can then impose its own stay.

Moreover, Defendants will suffer if the TRO is entered because they cannot simply purchase another supply of sodium pentothal, as Blankenship well knows, based on his citations to articles commenting on the short, if not nonexistent, supply of sodium pentothal.   Finally, Defendants have a strong interest in seeing Blankenship's execution carried out with minimal delay.   Blankenship committed the crimes of which he was convicted in 1978.   In 1988, the Georgia Supreme Court upheld both his conviction and death sentence.   And yet, over three decades after Blankenship murdered Ms. Bowen, this case still has not been concluded.

Accordingly, Blankenship has failed to show that the balance of harms tilts in his favor.

### D.   Public Interest

Blankenship contends that the public has a strong interest in ensuring that government officials are acting within the parameters of the Eighth and Fourteenth Amendments and that granting his motion for a TRO would protect this interest because he has shown that executing him

with an expired drug would violate the Eighth and Fourteenth Amendments.

However, as discussed above, Blankenship has not shown that Defendants' use of their current supply of sodium pentothal would violate the Eighth and Fourteenth Amendments.   Moreover, his requested injunction is broader than necessary; he asks the Court to enjoin his execution.  He has not narrowly tailored his requested injunction to the specific conduct that he is challenging.   This suggests that he is not concerned about the public interest, but only his own.

Finally, the Eleventh Circuit has held that like the state, the victims of a condemned inmate's crimes have a strong interest in seeing the inmate's punishment exacted, particularly because the crimes are usually heinous and the victims are entitled to closure.  *See Jones*, 485 F.3d at 641. Blankenship has failed to address why his requested TRO should trump this interest.   Accordingly, Blankenship has failed to show that this element weighs in his favor.

For all of these reasons, Blankenship has failed to show that he is entitled to injunctive relief.

## V.    Conclusion

Plaintiff's motion for a TRO and stay of execution is DENIED [5]. Defendants' motion to dismiss [6] is GRANTED based upon Blankenship's failure to exhaust his administrative remedies and failure to state a claim upon which relief can be granted.   The Clerk is DIRECTED to drop the "Unknown Agents and Employees of the Georgia Department of Corrections" as parties.

The Court's disposition of Defendants' motion results in dismissal of Blankenship's entire action.   Thus, the Clerk is DIRECTED to close the case.

IT IS SO ORDERED this 15th day of February, 2011 at 5:55 p.m.

Timothy C. Batten, Sr.
United States District Judge